## Case No. 9,805.

MORGAN v. The PHILIP DE PEYSTER.

[6 N. Y. Leg. Obs. 441.]

District Court, S. D. New York. 1848.[1]

COLLISION — LOOKOUT — VESSEL CLOSE HAULED — PRIVILEGED TACK.

1. The neglect of keeping a sufficient look-out in the day-time pronounced gross negligence. No custom contrary to the exercise of this precaution allowed weight.

2. A vessel close hauled on the starboard tack, when meeting one on the port tack, has the right to keep her wind and hold on, as a general rule, until the necessity of changing her course to avoid a collision, becomes apparent.

3. A vessel close hauled on the privileged tack has the right to suppose that the other is performing her duty in keeping a "look-out," and will avoid her.

4. Where the vessel on the unprivileged tack had no sufficient look-out, and was hailed from the other vessel, and the hail was not heard in time to avoid the latter: held, that the collision was attributable to the want of a look-out, and the vessel neglecting this precaution was answerable for the consequences.

[Cited in Smith v. The Blossom, Case No. 1,564; The Catharine and Martha, Id. 2,512.]

[This was a libel by Charles Morgan against the schooner Philip De Peyster.]

The ship Emily, in the month of November, during broad day and fine weather, was bearing up the bay of New York, tide flood, wind from N. N. W., and blowing a six-knot breeze, the ship had tacked on the east shore, about a mile to the southward of Governor's Island, and was standing to the westward. The schooner Philip De Peyster, a coasting vessel, was also beating up, and was standing close hauled on the larboard or port tack, and was seen from the Emily when half a mile off. On board the schooner, besides the man at the wheel, was another on deck, others were below. The attention of the men on board of the schooner was called to the ship by a hail from her, when she was seen by

---

[1] [Affirmed by circuit court; case unreported.]

·them for the first time. and on the lee-bow of the schooner. The helm of the schooner was at once put hard up (aport) and she kept away (fell off) so as to go into the ship abaft of midships, in an angular direction towards the ship's stern, doing great damage to the ship and making a wreck of herself, and was towed up to the city by a·steamboat. The ship continued her course. There was some question and other proofs whether the ship had been about long enough to have steerage way on her; the clear weight of evidence, however, was that she had sufficient way to have gone in stays again.

E. Burr, C. Benedict, and W. R. Bebee, for libellant.

George Wood, Nelson Chase, and W. Q. Morton, for claimants.

BETTS, District Judge. 1. Upon the proofs it is found the Emily committed no fault in not taking measures to avoid the De Peyster previous to the hail. If she was without headway at the time, she had no power to do anything, and if she was under way and running six knots she had, by the usage of navigation, a right to hold her tack, until the necessity of changing it to avoid collision became apparent (2 Hagg. Adm. 174; Story, Bailm., 2d Ed.. §§ 6, 11), and on the evidence, that was not until after ineffectual hails to the De Peyster.

2. It is further found on the proofs that after it was discovered the De Peyster did not observe the hails, the Emily could have made no movement that would have avoided the collision; for if she was running six knots and the De Peyster eight, they were approaching at the rate of fourteen knots and their distance, if supposed to be 80 or 100 rods would be run over in 15 minutes, and if they were only so many yards, instead of rods, distant apart they would meet in about three minutes (and the time of collision would conduce strongly to prove that the vessels could not have been 30 or 40 rods apart), and accordingly the Emily so situated could make no manoeuvre that would remove her out of the line of approach of the De Peyster, within the time necessary under either supposition.

3. The Emily had a right to suppose the De Peyster saw her. and though apparently coming close upon her, could and would avoid her; the practice of that kind of craft so to run is fully proved, and that the facility with which they are manoeuvred justified the Emily in holding her own tack, and relying upon the movements of the De Peyster until the hails were made, after that it is clearly shown she had no power to avoid a collision.

4. The De Peyster was guilty of a gross fault in keeping no look-out on the deck. The evidence is clear that the accident would have been avoided if a look-out had been kept. No custom or habit with such craft, however general, can dispense with the use of a precaution so necessary to the safety of other vessels as well as their own, and as the accident arose from that fault the schooner is answerable for its consequences. 2 Dod. 83, 85.

5. Upon the proofs I consider the injuries received by the ship to be at least $1,200, and I decree for the libellants to that amount with costs to be taxed. 1 Hagg. Adm. 109.

The above case was heard on appeal before Nelson. Circuit Justice, and further proofs introduced by the parties. The judgment of the district court was affirmed. [Case unreported.]